171      109
19 SC 1643

# Bosshardt & Wilson Co., Appellant, v. Crescent Oil Co., Limited.

*Contract—Option—Consideration—Revocation.*

Where an option is given to accept an offer within sixty days, and there is no consideration for the option, the party making the offer may revoke it at any time before acceptance.

*Corporations—Manufacturing corporations — Executory contract—Ultra vires.*

A corporation organized for the sole purpose of manufacturing cannot enforce an executory contract to sell and deliver to it goods which are not to be used in the process of manufacturing but are to be sold again by the corporation for profit.

Argued April 10, 1895.   Appeal, No. 317, Jan. T., 1895, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1894, No. 216, entering nonsuit.   Before GREEN, WILLIAMS, MC-COLLUM, DEAN and FELL, JJ.   Affirmed.

Assumpsit to recover damages for breach of contract.

William W. Mellon was joined as a defendant when the suit was brought, but the record was subsequently amended by striking out his name.

Plaintiff's statement was as follows.

" The Bosshardt & Wilson Company, a corporation organized under the laws of the state of Pennsylvania, complains of the Crescent Oil Company, Limited, and William L. Mellon, defendants, and says :

" That the defendant, the Crescent Oil Company, Limited, is a partnership association limited, created by and existing under the laws of Pennsylvania engaged in the business of producing, refining, buying, and selling petroleum and its products, and generally the transaction of all matters thereto or connected therewith.

" That on the 29th day of March, A. D. 1888, Jacob Bosshardt and Charles A. Wilson, then trading as Bosshardt & Wilson, made a contract in writing with the Atlantic Refining Company, a corporation of the state of Pennsylvania, wherein and whereby the said Bosshardt & Wilson (who had a valuable oil business a part of which was the exporting of crude petro-

leum to France and Cuba) agreed to buy from said Atlantic Refining Company all the crude petroleum required for said export trade for the term of five years from the 29th March, 1888, and from year to year thereafter unless terminated by giving each to the other ninety days' notice.

" That said export trade amounted to about one hundred thousand barrels per year, in which there was a profit to the said firm of Bosshardt & Wilson of not less than $20,000 per year.

" That on or about the 18th day of November, 1890, the said firm of Bosshardt & Wilson was dissolved and the said Bosshardt & Wilson Company was organized under the laws of the state of Pennsylvania and said company purchased the business of the said firm of Bosshardt & Wilson including the said contract of the 29th of March, 1888, with said Atlantic Refining Company, and said contract was in force for an additional period of one year from the 29th of March, 1893, to the 29th of March, 1894.

" That while said contract was in force and the said Atlantic Refining Company were required by the terms of said contract to still supply the plaintiffs with all the crude petroleum needed by them for their said export trade with France, the said Atlantic Refining Company refused so to do, and the plaintiffs were compelled to buy a portion of their needed supply elsewhere, and did so purchase. While this condition of affairs was prevailing, and previous thereto, William L. Mellon on behalf of the Crescent Oil Company for several months prior to the 31st of May, 1893, frequently called upon the plaintiffs, the Bosshardt & Wilson Company, for the purpose of inducing the plaintiffs to give up their said contract with the Atlantic Refining Company which was well known to the defendants, and to buy all the crude petroleum needed and required by the plaintiffs for their said valuable export trade from the said Crescent Oil Company, Limited, and that the plaintiffs should make efforts, by a visit to Paris, to increase said trade of one hundred thousand barrels per year to at least four hundred thousand barrels.

" And thereupon, to wit, on or about the 31st of May, 1893, the said plaintiffs entered into and made with the defendants a verbal agreement as follows :

" That the plaintiffs would not buy any crude petroleum for export from the Atlantic Refining Company, but would buy from the defendants for two years all the crude petroleum plaintiffs should need and require for their existing French export trade and that the plaintiffs would send, at the cost of the plaintiffs, the said Charles A. Wilson to Paris for the purpose of increasing said export trade in crude petroleum with other French refiners to an extent of at least four hundred thousand barrels per year.

" And thereupon the defendants agreed with the plaintiffs in consideration of the aforesaid agreement and undertaking upon the part of the plaintiffs, that they, the said defendants would sell and deliver to the plaintiffs, for export only, not less than four hundred thousand barrels of crude petroleum per annum for the period of two years to supply their existing trade and any increase thereof, and in consideration also of the fact (well known and understood by the defendants at the time of making this agreement between the plaintiffs and defendants) that the plaintiffs would, by giving up their contract with the Atlantic Refining Company, lose their French export trade, unless the defendants would comply with their agreement to supply all the crude petroleum needed and required by the plaintiffs for their then French trade, as well as any increase thereof, the defendants then and there further agreed with the plaintiffs that there should positively be no default in delivering to the plaintiffs all the oil they needed for their then established export trade and any increase thereof.

" The defendants at the same time further agreed with the plaintiffs that they would deliver to the plaintiffs all of said oil for export at market prices, and that the cost of transportation from the oil wells to seaboard should be subsequently mutually agreed upon.

" That in pursuance of said agreement and mutual understanding the plaintiffs at a cost of $2,000 and upwards sent the said Charles A. Wilson to Paris for the purposes aforesaid. That in due time said Charles A. Wilson, who was accompanied by the plaintiff, Jacob Bosshardt, arrived in Paris, and after some negotiations succeeded in making a contract to supply not only the then customers of the plaintiffs, but other French refiners of petroleum at Paris, with the full quantity of four

hundred thousand barrels of crude petroleum per year for two years, all of which facts were communicated to William L. Mellon, representing the said defendants, who verbally ratified the same in accordance with the agreement of the defendants so to do, first made with the plaintiffs as aforesaid in May, 1893.

" The plaintiffs further aver that, acting in good faith with the said defendants and in pursuance of their agreement, they, the plaintiffs, gave up their contract with the Atlantic Refining Company and were ready and willing to fully perform their part of the said agreement, and so notified the defendants.

" That on or about the 31st day of July, 1893, a meeting was had in Pittsburg, Pa., between the plaintiffs and defendants. That in accordance with and in consequence of said meeting the following letter was written to and received by the plaintiff corporation:

" ' PITTSBURGH, PA., July 31st, 1893.

" ' BOSSHARDT & WILSON COMPANY, Philadelphia, Pa.:

" ' Gentlemen :—In accordance with an interview between the writer and your Mr. C. A. Wilson, would say that we are willing to enter into a contract with you for the furnishment of Pennsylvania crude oil (known as Washington oil) for a term of two years, and should the situation remain the same at the end of that time the contract to be continued, in an amount not exceeding four hundred thousand barrels, of forty-two gallons each, per year, at a price equal to the crude oil market price for Philadelphia delivery as quoted on the New York Produce Exchange from time to time ; you guaranteeing on your part that you shall purchase and pay for at least one hundred thousand barrels each year.

" ' We wish to state that in the past few months we have met exceedingly low prices, which we feel are only temporary. We wish therefore, in justice to all parties concerned, to fix the minimum price of the proposed contract, based on the actual market price paid for crude oil at the wells, with transportation and handling charges delivered in bulk to the vessel, of thirty cents per barrel, and in case the quotation of the Produce Exchange advances above the minimum above fixed the price is to advance accordingly until it reaches a price equal to the actual price of oil at the wells, with fifty cents per barrel transportation and handling charges added to vessel at Marcus Hook.

The fifty cents per barrel is to be the maximum price above the well price, it being understood that all the oil purchased under the contract must be for export to France and not consumed or refined in the United States.

" ' We would say further that we have always felt disposed to meet the prices of our competitors, and that we always carry a large stock of oil, which necessarily insures to our customers prompt delivery.

" ' We extend to you a refusal of making the contract on the above basis for the term of sixty days from this date. Should it not be accepted in writing on or before that time the above is to become null and void, and without effect between us.

" ' Yours truly,

" ' THE CRESCENT OIL COMPANY,

" ' W. L. MELLON,

" ' Chairman and Manager.'

" That this option or offer was made solely in order that it might be sent to France as evidence of plaintiff's ability to supply oil, and in consideration of the express undertaking and agreement made by the plaintiffs at the said meeting in Pittsburg, that they, the plaintiffs, would within sixty days of the date of said option or offer accept the terms thereof.

" That on or about the 19th of September, 1893, the plaintiffs notified the defendants verbally that the said undertaking, agreement, or option contained in the said letter was accepted by the plaintiffs, and the defendants thereupon expressed themselves satisfied with the said verbal acceptance, and stated that they would carry out and perform their part of the agreement.

" That on September 26, 1893, the plaintiffs received the following letter:

" ' PITTSBURGH, PA., September 25th, 1893.

" ' BOSSHARDT & WILSON COMPANY, Philadelphia, Pa.:

" ' Dear Sirs:—We wish to advise you that we withdraw our offer of July 31st to furnish four hundred thousand barrels per year of Pennsylvania crude oil for France, per terms and on basis stated in our letter of that date. You will therefore consider the same canceled.

" ' Yours truly,

" ' W. L. MELLON,

" ' Chairman and Manager.'

" That the plaintiffs replied to said letter as follows :

" ' PHILADELPHIA, September 27th, 1893.
" ' THE CRESCENT OIL COMPANY LIMITED, Pittsburgh, Pa. :

" ' Dear Sirs :—We hereby notify you that we accept and will fully carry out the option and contract given to us by your company by letter dated Pittsburgh, Pa., July 31st, 1893, for the furnishment of Pennsylvania crude oil, known as Washington oil, according to and upon the terms and conditions in said letter expressed.

" ' We hereby repudiate your attempted withdrawal of said option and contract as expressed in your letter to us, dated Pittsburgh, Pa., September 25th, 1893.

" ' Yours truly,
(Signed) " ' BOSSHARDT & WILSON COMPANY.
" ' By J. BOSSHARDT,
" ' President.'

" That on or about September 25, 1895, the defendants wrongfully and fraudulently refused to perform their said agreements, whereby they have caused the plaintiffs to lose a large sum of money and almost all their export trade.

" That said plaintiffs would have made upon said four hundred thousand barrels of crude petroleum per year for two years, which said defendants were bound under their contract to deliver to them, the plaintiffs, the sum of $119,250.

| | |
|---|---:|
| " Commission or profits one fourth per cent of one cent per gallon on four hundred thousand barrels per year for two years . . . | $84,000 00 |
| One per cent additional of at least . . . | 12,750 00 |
| One hundred and seventy thousand barrels per year in barrels, or total of three hundred and forty thousand barrels at five cents per barrel, | 17,000 00 |
| Shipping commission on barrel vessels (estimated), . . . . . . . . | 3,300 00 |
| Shipping commission on bulk vessels (estimated), . . . . . . . | 2,200 00 |
| | $119,250 00 |
| | 5,500 00 |
| | $113,750 00 ' " |

From the charter of the plaintiff it appeared that it was formed for the purpose of manufacturing illuminating and lubricating oils and all products of petroleum, with the right of manufacturing packages for holding the same, and transacting all the business necessarily incident thereto.

At the trial plaintiff's evidence tended to support the averments of the statement.

The court, in the following opinion by ARNOLD, J., entered a compulsory nonsuit:

The letter of the defendant of July 31, 1893, tendered an option to the plaintiff of a contract for a large quantity of oil, and concluded by saying, "We extend to you a refusal of making the contract on the above basis for the term of sixty days from this date. Should it not be accepted in writing on or before that time, the above is to become null and void and without effect between us." On September 25, 1893, the defendant company withdrew the offer of July 31, and it is now contended in its behalf that no contractual relations existed between the parties. That such an option may be withdrawn any time before acceptance is shown by the long list of cases cited in Benjamin on Sales, section 41, in note. The case of the Boston & Maine Railroad Company v. Bartlett, 3 Cushing, 224, was the case of an offer to be accepted in a certain time, and the court decided that the contract might have been withdrawn any time before acceptance. In that case, however, the contract was accepted within the time limited. There is an exception in cases in which a consideration is paid for the offer of a contract, but I do not consider that this is such a case. Here the plaintiff company had a contract with the Atlantic Refining Company which expired in March, 1893, and desiring to obtain a supply of oil from the defendant company, conversations were had between some of the officers of the plaintiff company and Mr. Mellon, acting on behalf of the defendant company, in which the officers of the plaintiff company stated how much oil they desired to have, and Mr. Mellon, for his company, agreeing to furnish it, and stating that it would be able to furnish a great deal more if required. The efforts on the part of the officers of the plaintiff company to obtain customers in France were efforts expended in their own behalf and for their own benefit in order to increase their business.

It was for their advantage that the officers visited France and made this expenditure of money. When the first of them came back, in July, 1893, he no doubt told Mr. Mellon the result of his visit, and upon those conversations Mr. Mellon made the offer of July 31, 1893. It states exactly the terms of the offer by Mr. Mellon's company. If there ever was a case in which the written agreement of the parties can be said to contain all of the preliminary conversations or may be said to be based upon the preliminary conversations and to include the essential parts thereof, it seems to me that this is that kind of a case.

I am of opinion, therefore, that the defendant company had the right to withdraw its offer of an option to the plaintiff company, and that it did withdraw it on September 25, 1893, which was before the plaintiff company accepted the offer in writing.

The plaintiff company seeks to hold the defendant to its contract by an alleged verbal acceptance made prior to September 25, and relies upon a line of cases in which, although written notices are required prior to bringing suit, yet verbal notices have been held to be a waiver of the written notices. But these cases concern simply the preliminaries to suit, and I do not believe any case can be found in which that law applies to so vital a matter as the formation of the contract upon which the suit is based. Here the defendant company expressly declared that the acceptance should be in writing, and, in my judgment, nothing else than a written acceptance was sufficient to bind the contract. This was done, no doubt, to avoid disputes of this kind by having the acceptance in writing.

Upon the other point, that the contract was ultra vires on the part of the plaintiff company, I am not free from doubt. The defense is sometimes said to be an ungracious one, but nevertheless where it exists and is well founded in point of law it must be enforced. Perhaps if the contract had been carried out and the oil delivered, some reason might have been found to sustain an action for the price, but here the contract is not executed, and, even if accepted, is challenged at the outset before anything has been done under it. The cases cited on behalf of the defendant company throw great doubt on the right of the plaintiff company to enforce such a contract, for the reason that under its charter as a manufacturing company

it is not allowed to engage in the business of buying and selling without doing some kind of manufacture upon the articles which it buys and sells.

The motion for a nonsuit is sustained.

The court subsequently refused to take off the nonsuit.

*Error assigned* was refusing to take off the nonsuit.

*P. F. Rothermel, Jr., J. Warren Coulston* with him, for appellant.—It is submitted that the evidence discloses that a verbal contract was entered into between the appellee and the appellant, by which the appellee agreed that if the appellant would forfeit its contract with the Atlantic Refining Company and would substitute the appellee's company for the Atlantic Refining Company, and take from it the one hundred thousand to one hundred and fifty thousand barrels of oil per annum, and would send C. A. Wilson, vice president of the appellant company, to France to endeavor to increase the trade to four hundred thousand barrels per annum, that it, the appellee, would furnish the one hundred thousand to one hundred and fifty thousand barrels of oil per annum.

The option was supported by a consideration, and defendant had no right to revoke it within the sixty days : 1 Benjamin on Sales, sec. 41 ; Pollock on Contracts, sec. 23 ; 1 Parsons on Contracts, 482; 3 Am. & Eng. Ency. Law, 851; McClelland v. Rush, 150 Pa. 57.

Where the contract has been performed or partially performed by either of the parties the other cannot set up as a defense to an action that the corporation had no authority to enter into it: 1 Lawson's Rights & Remedies, sec. 365; 2 Morawetz on Corporations, sec. 689.

The plea of ultra vires should not, as a general rule, prevail, whether interposed for or against the corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong: Wright v. Pipe line Co., 101 Pa. 204; R. R. Co. v. R. R., 6 W. N. C. 115; De Graff v. American Linen Thread Co., 21 N. Y. 124; Parish v. Wheeler, 22 N. Y. 494; Union Water Co. v. Murphy's Flat, etc. Co., 22 Cal. 621; Oil Creek etc. R. R. Co. v. Penna. Trans. Co., 83 Pa. 160; Chester Glass Company v. Dewey, 16 Mass. 94; Underwood v. Newport

Lyceum, 5 B. Monr. 129; Southern Life Ins. etc. Co. v. Lanier, 5 Fla. 110; Chicago Building Soc. v. Crowell, 65 Ill. 453; Railway Co. v. McCarthy, 96 U. S. 258; Pine Grove v. Talcott, 19 Wall. 666; Rutland, etc. R. R. Co. v. Proctor, 29 Vt. 96, 97; Ward v. Johnson, 95 Ill. 215; Hall Mfg. Co. v. American Ry. Supply Co., 48 Mich. 331.

Where the contract is not against public policy, nor in violation of the law, common or statutory, a defendant who has contracted with a corporation beyond its powers, which the law presumes him to know, is estopped from setting that up as a defense upon the contract: Bigelow on Estoppel, 5th ed., p. 464; Oregonian Ry. Co. v. Oregon Ry., 10 Sawy. 464; Cowell v. Springs Co., 100 U. S. 55; Close v. Glenwood Cem., 107 U. S. 466; Whitney v. Robinson, 53 Wis. 309; Manufacturing Co. v. Montgomery, 74 Mo. 101; French v. Donohue, 29 Minn. 111; Franklin v. Twogood, 18 Iowa, 515; Pancoast v. Travelers' Ins. Co., 79 Ind. 172; Smelser v. Wayne Turnpike Co., 82 Ind. 417; Hasselman v. United States Mortg. Co., 97 Ind. 365; Dooley v. Wolcott, 4 Allen, 406; Brouwer v. Appleby, 1 Sandf. 158; St. Louis Gas Co. v. St. Louis, 84 Mo. 202; Father Matthew Soc. v. Fitzwilliams, 84 Mo. 406; Imboden v. Etowah Mining Co., 70 Ga. 86; Helena v. Turner, 36 Ark. 577; Central Agric. Assoc. v. Gold Ins. Co., 70 Ala. 120; Estey Manuf. Co. v. Runnels, 55 Mich. 130; First National Bank v. Gillilan, 72 Mo. 77; Branch v. Jesup, 106 U. S. 468, 481; Teutonia Bank v. Wagner, 33 La. An. 732; Latiolais v. Citizens' Bank, 33 La. An. 1444; Black River R. Co. v. Clarke, 25 N. Y. 208; Eaton v. Aspinwall, 19 N. Y. 119; Dutchess Cotton Manuf. Co. v. Davis, 14 Johns. 238; McBroom v. Lebanon, 31 Ind. 268.

*J. McF. Carpenter, Richard C. Dale* with him, for appellee.—The option given by the defendant was revocable at any time before acceptance in writing by plaintiff: Routledge v. Grant, 4 Bing. 635; Byrner v. Van Tienhoven, L. R. 5 C. P. D. 344; Stevenson v. McLean, L. R. 5 Q. P. D. 346; Fisher v. Seltzer, 23 Pa. 308.

A manufacturing corporation has not the right to recover damages for breach of an executory agreement to sell and deliver raw material, not to be manufactured, but to be sold as

merchandise : Oil Creek & A. R. R. v. Penna. Trans. Co., 83 Pa. 160; Wright v. Pipe Line Co., 101 Pa. 204; Com. v. Thackara Mfg. Co., 156 Pa. 510 ; Com. v. J. B. Lippincott Co., 156 Pa. 513 : Day v. Spiral Spring Buggy Co., 8 Am. & Eng. Corporation Cases, 220 ; Central Transportation Co. v. Pullman, 139 U. S. 24; Ashbuy Carriage Co. v. Riche, L. R. 7 H. L. 653.

OPINION BY MR. JUSTICE McCOLLUM, October 7, 1895 :

A careful study of the evidence in the case has convinced us that there was no contractual relation between the litigants before July 31, 1893, and that their previous conversations in regard to a contract resulted and were merged in the offer contained in the defendant's letter of that date. This letter expressed the willingness of the defendant to enter into a contract with the plaintiff on the terms stated in it, and extended to the latter for the term of sixty days the privilege of accepting or refusing the offer, on condition that if it was not accepted in writing " on or before that time " it should be void. The offer was solicited by the plaintiff after its representative had ascertained what amount of oil it could dispose of to its customers in France, and all that was required to establish a contract relation between the parties after the offer was made was a written acceptance of it. There is nothing in the offer which indicates that there was a consideration for the option it gave nor anything in the oral evidence which stamps the latter as irrevocable during the time allowed by the letter for the exercise of. it. The trip made by the company's agents to France was at its expense and for the advancement of its interests. Neither the trip nor the expenditures incurred in making it had any connection with the option in question. The Atlantic Refining Company contended that its contract with the plaintiff expired on the 29th of March, 1893, and refused to deliver any oil under it after that time. The plaintiff's contract with the Atlantic Company was therefore determined or broken by the other party to it, and its purchase of oil from the defendant in August, 1893, affords no support to its present contention.

If there was a verbal agreement between the litigants like the contract offered by the defendant to the plaintiff on the 31st of July, there was no occasion for the offer and it is not

satisfactorily accounted for. The effect of the offer and the option connected with it would be to release the plaintiff from liability to the defendant on the verbal agreement, while according to the contention of the former the latter remains bound by it. But we need not consider the consequences of a condition which has no existence, or of the success of a contention unauthorized by the evidence.

There being no consideration for the offer in this case the defendant had a clear right to withdraw it at any time before there was an acceptance of it. The learned counsel for the plaintiff contend that there was a consideration for it, but concede that if there was neither a consideration for nor an acceptance of it, the right of the defendant to withdraw it is plain and indisputable. By the terms of the offer the defendant could not be held to it without an acceptance of it in writing. It is admitted that there was no written acceptance of the offer before it was withdrawn. But it is claimed that there was a verbal acceptance of it on the 19th of September, six days before it was withdrawn, and that this acceptance dispensed with the written acceptance stipulated for in the letter of July 31st. While we are not prepared to assent to this claim we do not deem it necessary to discuss it, because in the view we have taken of the case a written acceptance of the offer would at most have created an executory contract, the enforcement of which by the plaintiff could be successfully resisted by the defendant on the ground that the former was not authorized by its charter to enter into it. This is one of the defenses made to the action, and it would have to be sustained even though the alleged verbal acceptance had the effect claimed for it. We conclude that the learned court below did not err in refusing to take off the nonsuit.

Judgment affirmed.